UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY JAMES McCLUNG,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA BOARD OF STATE AND COMMUNITY CORRECTIONS, et al.,<br><br>Defendants. | No. 2:22-cv-01740 TLN SCR P<br><br><br><br>ORDER |

Plaintiff is a state inmate proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Before the undersigned is plaintiff's third amended complaint ("TAC") for screening (ECF No. 30) and request for reasonable accommodations (ECF No. 32).

For the reasons set forth below, the undersigned finds that the TAC states a cognizable Fourteenth Amendment claim regarding the amount of daily in-cell confinement against defendant Placer County and defendants Powers and Bell in their official capacities, but no other cognizable claims. Further, plaintiff's request for reasonable accommodations is denied without prejudice.

**LEGAL STANDARDS**

**I.      Statutory Screening of Prisoner Complaints**

The court is required to screen complaints brought by prisoners seeking relief against "a

1

governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In performing this screening function, the court must dismiss any claim that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**II.   42 U.S.C. § 1983**

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law (2) deprived plaintiff of rights secured by the Constitution or federal statutes. Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

////

### III. <u>Monell</u> Liability

Municipalities cannot be held vicariously liable under § 1983 for the actions of their employees. <u>Monell v. Dep't of Social Services</u>, 436 U.S. 585 at 691, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Id</u>. at 694. Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional deprivation. <u>Monell</u>, 436 U.S. 658, 690 (1978); <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006).

To properly plead a <u>Monell</u> claim based on an unconstitutional custom, practice, or policy, plaintiff must show that the government "had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [plaintiff] suffered." <u>AE ex rel. Hernandez v. County of Tulare</u>, 666 F.3d 631, 636 (9th Cir. 2012) (quotation marks and citation omitted). Plaintiff must also show that the policy or custom of the government "reflects deliberate indifference" to plaintiff's constitutional rights. <u>Castro v. County of Los Angeles</u>, 833 F.3d 1060, 1073 (9th Cir. 2016) (quotation marks and citation omitted). Unless the challenged policy is in writing, the municipal policy at issue must be the result of a "'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'" <u>Price v. Sery</u>, 513 F.3d 962, 966 (9th Cir. 2008) (quoting <u>Ulrich v. City & Cnty. of San Francisco</u>, 308 F.3d 968, 984-85 (9th Cir. 2002) (quotation omitted).

### IV. Linkage

Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. <u>See</u> <u>Monell</u>, 436 U.S. at 694; <u>Rizzo v. Goode</u>, 423 U.S. 362, 370-71 (1976). Plaintiff may demonstrate that connection by alleging facts showing: (1) a defendant's "personal involvement in the constitutional deprivation," or (2) that a defendant set "in motion a series of acts by others" or "knowingly refus[ed] to terminate a series of acts by others, which [the defendant] knew or reasonably should have known would cause others to inflict a constitutional injury." <u>Starr v. Baca</u>, 652 F.3d 1202,

1207-08 (9th Cir. 2011) (quotation marks and citation omitted).

**PLAINTIFF'S TAC**

**I.      Factual Allegations**

The TAC's claims concern the conditions of confinement at the South Placer Jail ("SPJ") and Placer County Jail ("PCJ"). Plaintiff was booked into the custody and care of SPJ on May 8, 2022, and transferred to PCJ on October 20, 2022. (ECF No. 30 at 13, ¶¶ 17-18.) Plaintiff was found guilty by trial on November 14, 2022, sentenced to prison on December 14, 2022, and transferred into the custody of the California Department of Corrections and Rehabilitation ("CDCR") on December 22, 2022. (Id., ¶¶ 19-21.)

The TAC names the following defendants: (1) Placer County; (2) Sheriff Devon Bell, in his official and individual capacities; (3) Captain David Powers, in his official and individual capacities; (4) Does #1-13, all Board Members of the California Board of State and Community Corrections (hereinafter "DOE BSCC"); (5) Does #14-25, all supervisory employees of the Placer County Sheriff's Office (hereinafter "DOE Supervisors"); and (6) Does #26-37, all sheriff's deputies or correctional officers with the Placer County Sheriff's Office (hereinafter "DOE Officers"). (Id. at 4-8.) Plaintiff seeks compensatory damages and punitive damage in unspecified amounts, and any other equitable relief the court deems just and proper. (Id. at 39.)

**A. Claim I: Daily Cell Confinement, Fourteenth Amendment**

Plaintiff's first claim challenges the amount of daily cell confinement during various "phases" at SPJ. First, plaintiff was on quarantine lockdown in the administrative segregation unit ("ASU") for 47.5 hours out of every 48 hours from May 8-22, 2022. (ECF No. 30 at 16-17, ¶¶ 49-53.) Second, from May 23, 2022, to June 1, 2022, plaintiff was confined in a single-occupancy cell in the ASU for 23 hours a day. (Id. at 17, ¶¶ 54-58.) Third, plaintiff was confined to a 12'x6', double-occupancy cell for a minimum of 19.5 hours per day from June 2, 2022, to October 20, 2022. (Id. at 18.) About once per week during the third phase, plaintiff was locked down with the other occupant for 24 to 42 hours. (Id., ¶ 61)

When not locked down during the three phases, plaintiff was at liberty to use the large space adjoining the cells known as the "dayroom." (ECF No. 30 at 15, ¶ 34.) During several

hours each day, the dayroom was unused by any detainees and would have been available for plaintiff's use.  (Id. at 16, ¶ 44.)

Plaintiff alleges defendants Sheriff Bell, Powers, Doe Supervisors, and Doe Officers were directly responsible for plaintiff's lockdown schedules, which are policies, practices, or customs of the defendant County.  Plaintiff further claims defendants County and Doe BSCC are indirectly responsible for his lockdown schedules because of their "respective roles in establishing and approving customs and policies." (ECF No. 30 at 15, ¶¶ 37-38.)  Plaintiff filed grievances but defendants Powers and Doe Supervisors claimed that the "Title 15" standards were met.  (Id. at 20-21, ¶¶ 84-85.)  The conditions of confinement degraded plaintiff's abilities at his trial, acted as a form of coercion and punishment, and caused him physical pain and mental and emotional distress.  (Id. at 19, ¶¶ 67-70.)

### B.  Claim II: Sleep Deprivation, Fourteenth Amendment

Plaintiff alleges he did not get adequate sleep at SPJ or PCJ.  DOE Officers woke plaintiff every day at 0400 hours for medication distribution.  (ECF No. 30 at 23, ¶ 91.)  The disturbance created by medication distribution, including the illumination of all lights, wakes up every inmate regardless of whether they are receiving medication or not.  (Id., ¶ 92.)  Breakfast is served at 0500 hours, and at 0700 every inmate's wristband is verified by Doe Officers.  At approximately 0715, detainees are called for transportation to court.  (Id., ¶¶ 93-95.)  Plaintiff attached several medical articles to support his claim that defendants wake up inmates at 0400 hours – the point inmates are likely in their deepest sleep – to "inflict maximum punishment."  (Id. at 25-26, ¶¶ 106-109.)

At night, dayroom concludes at 2200.  Until 2300 hours, the lights are fully bright and noises of cleaning are too loud to allow sleep.  (ECF No. 30 at 23, ¶¶ 96-97.)  Plaintiff alleges defendants Sheriff Bell, Powers, Doe Supervisors, and/or Doe Officers were directly responsible for this sleep schedule.  Defendants Doe BSCC and County were indirectly for responsible for approving these customs and policies.  (Id. at 24, ¶¶ 100-101.)

### C.  Claim III: Diet, Fourteenth Amendment

Plaintiff alleges he was provided with a diet that was nutrient deficient, particularly in that

5

it lacked appropriate types and quantities of protein. (ECF No. 30 at 29-30, ¶¶ 132-133.) Defendants Powers, Doe Supervisors, and Doe Officers made some changes in response to plaintiff's grievances that improved the portion sizes, but the served meals still frequently did not match the menu. (Id., ¶¶ 128-129.) Plaintiff "consistently felt hungry" while in custody from May 8, 2022, to December 14, 2022. (Id. at 30, ¶ 135.)

### D. Claim IV: Failure to Train/Supervise

Pled in the alternative, plaintiff alleges that his injuries were caused by defendants Doe BSCC, County, Sheriff, Powers, Doe Supervisors, and/or Doe Officers' failures to adequately train and supervise its employees about the effects of sleep health, the effects of excessive in-cell confinement, and/or appropriate nutrition and diet. (ECF No. 30 at 32-35.)

### E. Claim V: Municipal Liability

Plaintiff's last claim for "municipal liability" reiterates that the municipal defendants, as the final policy makers, are liable for the "longstanding and systemic deficiencies of defendant County's jail." (ECF No. 30 at 36-37.)

## DISCUSSION

### I. Defendants

#### A. Plaintiff has not stated a claim against the "Doe" Defendants.

Plaintiff's TAC does not state a claim against any of the 37 total "Doe" defendants, whom plaintiff broke into three groups: (1) Doe BSCC (#1-13); (2) Doe Supervisors (#14-25); and (3) Doe Officers (#26-37).

"Whether a defendant is named or has been designated as a 'John Doe,' Plaintiff must tie that defendant's actions to the specific harms alleged to have been caused to Plaintiff." Zepeda v. Sullivan, No. 1:06-cv-1391 AWI GSA PC, 2009 WL 1288235, at *3 (E.D. Cal. May 7, 2009). Here, the TAC refers to the Doe defendants only by their groups and does not adequately link any specific individual Doe defendant to an alleged violation of plaintiff's rights. For example, in his sleep deprivation claim, plaintiff alleges that "DOE Officers woke PLAINTIFF up before he got adequate sleep." (ECF No. 30 at 24, ¶ 103; see also id. at 15, ¶ 40 (Doe Supervisors and Doe Officers "locked PLAINTIFF in a cell for 19.5 hours daily"; id. at 30, ¶ 141 (All Doe defendants

"acquiesced to a foodservice program that served nutrient deficient meals."). Such sweeping allegations are insufficient to put prospective defendants on notice of their alleged actions or omissions that plaintiff claims violate his federal rights. See Alexander v. Tilton, 2009 WL 464486, *5 (E.D. Cal. Feb. 24, 2009) (screening out Eighth Amendment serious medical needs claim against group of "medical Does"). Accordingly, plaintiff has not stated any cognizable claims against Does 1-37.

### B. The TAC does not state individual capacity claims against Bell or Powers.

Plaintiff's TAC repeats conclusory recitations of Bell's and Power's personal involvement in the alleged constitutional violations without any factual underpinning. (See, e.g., ECF No. 30 at 16 ("PLAINTIFF was locked [in] his cell during periods when the dayroom was unused because … SHERIFF [and] POWERS….intended punishment for PLAINTIFF.").) Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982); see also Moss v. U.S. Secret Serv., 572 F.3d 962, 970 (9th Cir. 2009) ("[F]or a complaint to survive…the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief" (citing Twombly, 550 U.S. at 557)). Accordingly, plaintiff has not stated any claims against defendants Sheriff or Powers in their individual capacities.

### II.  Fourteenth Amendment Claims

The Fourteenth Amendment requires the government to do more than provide minimal necessities to non-convicted detainees. Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004). Under the Due Process Clause, pretrial detainees have a right to be free from jail conditions or restrictions that "amount to punishment." Bell, 441 U.S. at 535-37; see also Pierce v. Cnty. of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008). "This standard differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment." Pierce, 526 F.3d at 1205.

The proscription against punishment before trial can be violated in multiple ways. Most

7

obviously, it can be violated if restrictions are "imposed for the purpose of punishment." Bell, 441 U.S. at 538; see also Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015) (quoting Bell, 441 U.S. at 538) ("'[P]unishment' can consist of actions taken with an 'expressed intent to punish.'"). If a jailer lacks express intent to punish, "a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" Id. (quoting Bell, 441 U.S. at 561).

To "constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." Demery v. Arpaio, 378 F.3d 1020, 1030 (9th Cir. 2004). "Absent evidence of express punitive intent, it may be possible to infer a given restriction's punitive status 'from the nature of the restriction.'" Pierce, 526 F.3d at 1205 (quoting Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002)). A restriction may also be punitive if it involves a "reckless disregard for inmates' health or safety." Norbert v. City & Cnty. of San Francisco, 10 F.4th 918, 928 (9th Cir. 2021). There is no due process violation, however, if restrictions are "but an incident of some other legitimate government purpose." Bell, 441 U.S. at 538.

### A. Amount of Daily Cell Confinement[1]

For screening purposes only, the undersigned finds that plaintiff's TAC contains sufficient facts to state a Fourteenth Amendment claim regarding the amount of daily cell confinement. The TAC alleges that during the four-plus months he spent in SPJ's general population as a pretrial detainee, plaintiff was subjected to at least weekly lockdowns of 24 to 42 hours, and otherwise spent a minimum of 19.5 hours in his 12'x6' double-occupancy cell per day. (ECF No. 30 at 18-20.) This caused plaintiff emotional and mental distress, including "degraded … capabilities at court hearings." (Id. at 19, ¶ 67.) Plaintiff's facts minimally support the inference that the frequency and amount of confinement demonstrate at least reckless disregard for his

---

[1] In screening the second amended complaint, the previously assigned magistrate judge interpreted plaintiff's cell confinement claim as alleging a lack of outdoor exercise. (See ECF No. 24 at 6-7.) Here, plaintiff clarifies that his injuries stem from a lack of exercise as well as "simply…being in a tiny space for an excessive number of hours per day." (ECF No. 30 at 15.)

8

health or safety. For example, plaintiff alleges that the facility was designed for inmates to spend nine hours per day in cells this size (id. at 18, ¶ 66) and that he has no history of violence in Placer County facilities that would justify the extended periods of lockdown (id. at 17, ¶ 55).

As discussed above, the TAC does not sufficiently allege the personal participation of defendants Powers, Bell, or any Doe defendant in the deprivation of plaintiff's rights. However, plaintiff has adequately alleged that the jails' daily schedules were the moving force before the amount of daily in-cell confinement, and that the daily schedules are an official custom or policy of the defendant County. (ECF No. 30 at 20, ¶¶ 80-82.) Accordingly, plaintiff has stated a Monell claim against the County. To that extent, plaintiff's allegations regarding in-cell confinement also state claims against defendants Powers and Bell in their official capacities. See Monell, 436 U.S. at 690, n.55 ("our holding today that local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which, as here, a local government would be suable in its own name.").[2]

While plaintiff has stated a cognizable Monell policy/custom claim regarding daily cell confinement, he has not stated a separate cognizable claim under a "failure to train" theory. To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees. Benavidez, 993 F.3d at 1153–54.

Here, plaintiff has not alleged any specific, non-conclusory facts regarding the County's training programs or policies, and therefore "has not pled facts that are sufficient to show any deliberate or conscious policy choice" by defendants in training its jail staff. See Nelson v. City of Fairfield Police Dep't, No. 2:22-CV 1619 DJC DB, 2024 WL 3396140, at *4 (E.D. Cal. July 12, 2024) (granting motion to dismiss failure to train claim where plaintiff offered no facts regarding the police department's training programs or policies). Accordingly, plaintiff has only

---

[2] The undersigned finds that plaintiff's fifth claim for "municipal liability" (see ECF No. 30 at 36-38) is redundant and does not state a claim for relief separate and apart from the above.

stated a cognizable Monell policy/custom claim against defendant Placer County and defendants Powers and Bell in their official capacities regarding the amount of daily in-cell confinement.

### B. Sleep Deprivation

The TAC alleges plaintiff received inadequate sleep at PCJ and SPJ. Plaintiff attributes the violations to the facilities' sleep schedules, which require the lights to be fully bright until 2300 hours and then turn back on at 0400 for medication distribution. (ECF No. 30 at 23-24.)

Pretrial detainees are entitled to confinement conditions that do not result in chronic sleep deprivation. See Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996). However, to rise to the level of a constitutional violation, the sleep deprivation must be sufficiently serious. See, e.g., LeMaire v. Maass, 745 F. Supp. 623, 636 (D. Or. 1990) (finding "no legitimate penological justification" for twenty-four hours of lighting per day), vacated on other grounds, 12 F.3d 1444 (9th Cir. 1993); Matthews v. Holland, No. 1:14-cv 1859 SKO (PC), 2017 WL 1093847, at *3 (E.D. Cal. Mar, 23, 2017) (extreme sleep deprivation where plaintiff was subjected to loud beeps in 5, 10, 15, and 20 minute intervals, 24 hours a day, for over one year).

Here, the TAC does not allege sufficient facts to state a Fourteenth Amendment claim for sleep deprivation. Courts have generally found that similar jail schedules do not amount to punishment. See e.g., Grizzle v. Cnty. of San Diego, No. 17-CV 0813 JLS (PCL), 2018 WL 1603212, at *4 (S.D. Cal. Apr. 3, 2018) (dimming the cell lighting for five hours during the night does not constitute punishment); Hampton v. Ryan, No. CV 03-1706 PHX NVW, 2006 WL 3497780, at *13 (D. Ariz. Dec. 4, 2006), aff'd, 288 F. App'x 404 (9th Cir. 2008) (24–hour cell lighting, which is dimmed for six hours at night, "does not deprive Plaintiff of the minimal civilized measure of life's necessities").

Further, as alleged, the light and sound disruptions are related to legitimate penological objectives such as overnight cleaning and medication distribution. Plaintiff claims the sleep schedule is designed to inflict "maximum punishment," but offers no specific allegations of defendants' intent other than two medical articles on circadian sleep rhythms. (See ECF No. 30 at 24-25.) Accordingly, the TAC does not state a Fourteenth Amendment claim for sleep deprivation.

### C. Diet

Plaintiff's allegations regarding the inadequate diet at Placer County jails do not state a cognizable Fourteenth Amendment claim. "Jail officials have a duty to ensure that detainees are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Shorter v. Baca, 895 F.3d 1176, 1185 (9th Cir. 2018). However, the Constitution "requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993).

Here, plaintiff objects to the type and quality of the food, particularly the lack of "appropriate types and quantities of protein." (ECF No. 30 at 29, ¶ 132.) But plaintiff has not alleged any facts that would indicate the food provided was not adequate to maintain health, such as evidence he lost significant weight or suffered from health issues. See, e.g., Gordon v. Cnty. of Riverside, No. ED CV 24-02118 JLS DFM, 2025 WL 756869, at *8 (C.D. Cal. Jan. 30, 2025) (screening in Fourteenth Amendment claim where jail allegedly fed pretrial detainee "900 to 1200 calories of rotten, spoiled food per day" and "provided foul smelling drinking water"), report and recommendation adopted, No. ED CV 24-02118 JLS (DFM), 2025 WL 754260 (C.D. Cal. Mar. 7, 2025). Accordingly, plaintiff has not stated a claim for relief based on the jails' food service.

### III. Options From Which to Choose

After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds that plaintiff has adequately stated a single valid claim for relief pursuant to the Fourteenth Amendment against defendant Placer County and defendants Bell and Powers in their official capacities regarding daily in-cell confinement at Placer County jails. The allegations in the complaint are not sufficient to state any claim for relief against Doe BSCC, Doe Supervisors, Doe Officers, Sheriff Bell in his individual capacity, or Captain Powers in his individual capacity; the complaint does contain any non-conclusory facts that personally link these defendants to a violation of plaintiff's rights. Moreover, the sleep and dietary conditions that plaintiff complains of do not rise to the level of constitutional violations as alleged.

It appears to the court that plaintiff may be able to allege facts to fix these problems. Therefore, plaintiff has the option of filing a fourth amended complaint. After selecting an option

11

from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

**Option 1:** The first option available to plaintiff is to proceed immediately against defendant Placer County and defendants Bell and Powers in their official capacities on the Fourteenth Amendment daily in-cell confinement claim. By choosing this option, plaintiff will be agreeing to voluntarily dismiss defendants Doe BSCC, Doe Supervisors, Doe Officers, Bell in his individual capacity, and Powers in his individual capacity, as well as agreeing to miss his other claims. The court will proceed to immediately serve the complaint and order a response from defendants Placer County and defendants Bell and Powers in their official capacities.

**Option 2:** The second option available to plaintiff is to file an amended complaint to fix the problems described above. The amended complaint must include the number for this case, **No. 22-cv-01740 TLN SCR P,** and be labeled **"Fourth Amended Complaint."** If plaintiff chooses this option, the undersigned will set a deadline in a subsequent order to give plaintiff time to file an amended complaint.

## IV.   Legal Standards for Amended Complaints

If plaintiff chooses to amend, he should also consider the following standards. First, the federal rules contemplate brevity; plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8. Plaintiff's TAC here runs a total of sixty-three pages and required extensive resources to screen at a time the court is facing heavy caseloads. An amended complaint of similar length very likely will result in delaying further screening pursuant to 28 U.S.C. § 1915A.

Second, plaintiff must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo, 423 U.S. at 370-71. The complaint must also allege in specific terms how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed

1 deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). These principles extend to any potential Doe defendants. "If Plaintiff can only list these defendants as John Doe, Plaintiff should allege specific acts that each Doe defendant did, such as 'John Doe 1 did X' and 'John Doe 2 and 3 did Y.'" Alexander, 2009 WL 464486, at *5.

Third, plaintiff is informed that the court will not refer to a prior pleading in order to make his amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes any prior complaints. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted). Once plaintiff files an amended complaint, any previous complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

## REQUEST FOR REASONABLE ACCOMMODATIONS

On November 22, 2024, plaintiff filed a request for reasonable accommodations related to arthritis in his writing hand. (ECF No. 32.) Plaintiff explains that he is concerned his TAC exceeded the page limit and was not accepted by the court. In the event "the court decides that plaintiff needs to further amend the complaint to state valid claims," plaintiff requests a reasonable accommodation that can assist him with a writing a complaint without using his hand. (Id.)

As explained above, plaintiff has the option of proceeding on his cognizable claims or filing a fourth amended complaint. Therefore, the undersigned will deny plaintiff's request for reasonable accommodations without prejudice, which means plaintiff can refile his request if he chooses to amend his complaint or at any other time in the future that his need for a reasonable accommodation arises.

Going forward, plaintiff is advised that he may submit filings in any written form, including typed, printed, handwritten, or a combination thereof, so long as his papers are legible. If he needs more time than that permitted by rule or court order to complete work on any paper required to be filed with the Court, plaintiff may file a request for extension of time before the relevant deadline expires. The court will consider each request on a case-by-case basis. Further,

while there is no page limit for an amended complaint, the undersigned again reminds plaintiff that the Federal Rule of Civil Procedure 8(a)(2) requires no more than a "short and plain statement of the clam showing that the pleader is entitled to relief."

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for reasonable accommodations (ECF No. 32) is denied without prejudice.

2. Plaintiff's claims against defendants Doe BSCC, Doe Supervisors, Doe Officers, Bell in his individual capacity, and Powers in his individual capacity, do not state claims for which relief can be granted.

3. Plaintiff has the option to proceed immediately on his single cognizable Fourteenth Amendment claim against defendant Placer County and defendants Powers and Bell in their official capacities regarding the amount of daily in-cell confinement, or to file an amended complaint.

4. Within 21 days from the date of this order, plaintiff shall complete and return the attached Notice of Election form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

5. If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened and will recommend dismissal without prejudice of defendants DOE BSCC, DOE Supervisors, DOE Officers, Bell in his individual capacity, and Powers in his individual capacity, as well as plaintiff's Fourteenth Amendment claims regarding sleep deprivation and inadequate diet/nutrition.

DATED: June 9, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY JAMES McCLUNG, | No.  2:22-cv-01740 TLN SCR P |
| Plaintiff, | |
| v. | NOTICE OF ELECTION |
| CALIFORNIA BOARD OF STATE AND COMMUNITY CORRECTIONS, et al., | |
| Defendants. | |

Check one:

\_\_\_\_\_ Plaintiff wants to proceed immediately on his Fourteenth Amendment claim regarding the amount of daily in-cell confinement against defendant Placer County and defendants Bell and Powers in their official capacities without amending the complaint.  Plaintiff understands that by choosing this option, the remaining claims and defendants will be voluntarily dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a).

\_\_\_\_\_ Plaintiff wants time to file an amended complaint.

DATED:_____

                                          Bradley James McClung
                                          Plaintiff pro se

1